AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California



**FILED**
Jan 27 2025
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ VeronicaCota    DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
Red iPhone )
Model: Unknown )
Seized as FP& F: 2025255200004701 Item: 0006 )

Case No.  25MJ8060

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-5, incorporated herein by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Fernando Quiroz*
Applicant's signature

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: 01/27/2025

*/s/ (signature)*
Judge's signature

City and state: El Centro, California    HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**   Red iPhone Cellphone
Model: Unknown
Seized as FP& F: 2025255200004701 Item: 0006
Seized from Juan Carlos MARMOLEJO-Flores
**(Target Device #5)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of December 4, 2024, up to and including January 4, 2025, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**   Blue NORD Cellphone
Model: One Plus Nord N30
Seized as FP& F: 2025255200004701 Item: 0002
Seized from Deanna Tiffany SMITH
**(Target Device #1)**

**A-2:**   Grey iPhone
Model: 16 Plus
Seized as FP& F: 2025255200004701 Item: 0003
Seized from Laura WRIGHT
**(Target Device #2)**

**A-3:**   Grey iPhone
Model: 13
Seized as FP& F: 2025255200004701 Item: 0004
Seized from Ashley Elizabeth MIQUEAL
**(Target Device #3)**

**A-4:**   White iPhone
Model: Unknown
Seized as FP& F: 2025255200004701 Item: 0005
Seized from Jorge Eduardo GUERRERO-Sandate
**(Target Device #4)**

**A-5:**   Red iPhone
Model: Unknown
Seized as FP& F: 2025255200004701 Item: 0006
Seized from Juan Carlos MARMOLEJO-Flores
**(Target Device #5)**

1  as further described in Attachments A-1 to A-5, and to seize evidence of a crime,
2  specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as
3  further described in Attachment B.

4      2.    The requested warrant relates to the investigation and prosecution of Ashley
5  Elizabeth MIQUEAL (MIQUEAL), Deanna SMITH (SMITH), and Laura WRIGHT
6  (WRIGHT) for transportation of illegal aliens Jorge Eduardo GUERRERO-Sandate
7  (GUERRERO) and Juan Carlos MARMOLEJO-Flores (MARMOLEJO) (collectively, the
8  "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of
9  California. The Target Devices were seized from MIQUEAL, SMITH, WRIGHT and the
10 Material Witnesses on or about January 3, 2025, incident to the arrest of MIQUEAL,
11 SMITH, WRIGHT and the Material Witnesses. The Target Devices are currently in the
12 possession of the Department of Homeland Security, El Centro Border Patrol Sector
13 Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room
14 of that office.

15     3.    Because this affidavit is being submitted for the limited purpose of
16 establishing probable cause in support of the application for a search warrant, it does not
17 set forth every fact that I, or others, have learned during the course of this investigation.
18 The information contained in this Affidavit is based upon my personal observations and
19 knowledge, my review of various official reports, and upon conversations with other
20 Border Patrol Agents. Dates and times are approximate.

21 **EXPERIENCE AND TRAINING**

22     4.    I am a United States Border Patrol Agent with the Department of Homeland
23 Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have
24 been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and
25 graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New
26 Mexico. The Border Patrol Academy curriculum covers specialized training in the
27 Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the
28 United States Code, criminal law, and statutory authority.

5.     I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the

3

illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

4

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On January 3, 2025, BPAs E. Mejorado, D. Yglesias, and J. Enriquez were operating the CA State Highway S2 checkpoint in Ocotillo, CA. The agents were in full patrol uniform and driving fully marked service vehicles. At approximately 11:15 p.m. agents were conducting immigration checks on people passing through the S2 Checkpoint and a Saturn Ion bearing Arizona license plates. The Saturn was operated by a female later identified as MIQUEAL, in the front passenger seat was a female later identified as WRIGHT, in the rear driver side seat was a male later identified as Jorge Eduardo GUERRERO-Sandate,(GUERRERO) in the rear middle seat was a male later identified as Juan Carlos MARMOLEJO-Flores (MARMOLEJO), and in the rear passenger side was a female later identified as SMITH.

11. MIQUEAL stopped the vehicle at the checkpoint, rolled down her window, and spoke with BPA Mejorado through the driver window. BPA Mejorado asked MIQUEAL where she was coming from and where she was going. MIQUEAL answered from El Centro, CA and going to San Diego, CA. BPA Mejorado asked if there were any guns, drugs, or hidden people in the car. MIQUEAL hesitated to answer the question. BPA Mejorado again asked the same question, MIQUEAL answered "No". BPA Mejorado asked all the occupants of the vehicle for identification. All three females provided their information while the two males did not speak or move. BPA Mejorado had MIQUEAL roll down the rear driver side window and asked GUERRERO and MARMOLEJO for

1 identification in English and Spanish. Both did not speak and avoided eye contact. BPA Mejorado asked a second time and MARMOLEJO provided a Mexican Voter Identification card. BPA Mejorado asked MARMOLEJO if he was a citizen of Mexico and MARMOLEJO stated he was. BPA Mejorado asked GUERRERO a third time for his identification and GUERRERO did not speak. BPA Mejorado notified BPA Yglesias that MARMOLEJO was a Mexican citizen, and GUERRERO was refusing to provide his information, BPA Enriquez asked GUERRERO for his information, and he provided a Mexican Voter Identification card.

12. MARMOLEJO and GUERRERO admitted to BPA Enriquez that they were citizens of Mexico and did not have a passport or visa to be in the U.S. legally. MARMOLEJO and GUERRERO also admitted having entered the U.S. illegally by other than a designated Port of Entry and furthered their entry into the U.S. by means of transportation provided by MIQUEAL. BPA Yglesias ran all five subjects' information through the El Centro Sector Border Patrol Communications Center. Upon receiving the information from the Communications Center, it was revealed that MARMOLEJO and GUERRERO were illegally in the U.S. MIQUEAL, WRIGHT, and SMITH were placed under arrest for 8 USC 1324 Alien Smuggling, and GUERRERO and MARMOLEJO was placed under arrest for 8 USC 1325 Illegal Entry. All five subjects were transported to the El Centro Border Patrol Station for questioning and processing.

13. During a post-Miranda statement, SMITH stated that her niece (MIQUEAL) and her friend (WRIGHT) drove to visit WRIGHT's family member at the hospital in El Centro. SMITH stated while traveling she fell asleep and only remembered stopping at an AMPM gas station and being asked to move so that they could help two individuals by giving them a ride. SMITH stated that she fell back asleep until reaching the Highway S2 Border Patrol Checkpoint where she was being detained along with MIQUEAL and WRIGHT for transporting two suspected illegal aliens. SMITH gave partial consent to have her electronic device searched. SMITH stated the phone could be searched if she could hold on to the phone. SMITH voluntarily unlocked and held the phone while BPA G.

Simeon and BPA Mejorado scrolled through her messages. BPA Mejorado requested to have SMITH sign a consent form to record messages between SMITH and MIQUEAL; SMITH declined the request.

14. Material Witness MARMOLEJO stated he was born and is a citizen of Mexico. MARMOLEJO stated he did not have the legal documents to be present in the U.S. MARMOLEJO stated that on January 3, 2025, he climbed over the International Boundary Fence and walked north until he reached Highway 94. MARMOLEJO stated that once he reached the highway, he called the smuggler with the alias of "El Abuelo" for pick up. MARMOLEJO stated a vehicle described by the coyote (smuggler) stopped on the shoulder of the highway, someone yelled to get in and then boarded the vehicle and was subsequently detained at Highway S2 Checkpoint. MARMOLEJO stated he was going to pay $8,000.00 United States Dollars (USD) to be smuggled in the U.S. with Los Angeles, CA being the intended destination. BPA Simeon and BPA Mejorado requested and received written consent from MARMOLEJO to search his electronic device. Upon the search the BPAs found messages between the suspected alien smuggler and MARMOLEJO consistent with the date and time of the event. The conversation revealed pictures of maps with highlighted routes and pin coordinates for the pickup on Highway 94 in San Diego County. A picture was shared from the suspected alien smuggler to MARMOLEJO showing a map with the location of an individual by the name of "Laura", matching the same first name of WRIGHT. MARMOLEJO was presented with a six-pack photo line up where he did recognize subject number 6 on two of the three separate photo line-ups.

15. Material Witness GUERRERO stated he was born and is a citizen of Mexico. GUERRERO stated he did not have the legal documents to be present in the U.S. GUERRERO stated that on January 3, 2025, he climbed over the International Boundary Fence and walked north until he reached Highway 94. GUERRERO stated that once he reached the highway a coyote was called for pickup. GUERRERO stated a vehicle described by the coyote stopped on the shoulder of the highway, someone yelled to get in

1  and then boarded the vehicle. GUERRERO stated that the co-pilot (WRIGHT) asked
2  MARMOLEJO and himself to get in the trunk to which they refused right before
3  approaching the Highway S2 Checkpoint where he was subsequently detained.
4  GUERRERO stated he was going to pay $9,000.00 USD to be smuggled into the U.S. with
5  Los Angeles, CA being the intended destination. GUERRERO was presented with a six-
6  pack photo line-up where he did recognize subject number 6 on the three separate photo
7  line-ups.

8        16.    During a search incident to arrest of MIQUEAL, SMITH, WRIGHT and the
9  Material Witnesses, five cellphones were found: a blue NORD cellphone (Target Device
10 #1) was found on SMITH's person by BPA E. Mejorado and SMITH claimed ownership
11 of this cellphone. A grey iPhone cellphone (Target Device #2) was found on WRIGHT's
12 person by BPA E. Mejorado and WRIGHT claimed ownership of this cellphone. A green
13 iPhone cellphone (Target Device #3) was found on MIQUEAL's person by BPA E.
14 Mejorado and MIQUEAL claimed ownership of this cellphone. A white iPhone (Target
15 Device #4) was found on GUERRERO's person by BPA E. Mejorado and GUERRERO
16 claimed ownership of this cellphone. A red iPhone cellphone (Target Device #5) was found
17 on MARMOLEJO's person by BPA E. Mejorado and MARMOLEJO claimed ownership
18 of this cellphone. All cellphones were claimed by their respective owners and seized as
19 evidence.

20       17.    I am aware that smuggling conspiracies require planning to successfully
21 evade detection by law enforcement.  In my professional training and experience, this may
22 require planning and coordination in the days and weeks prior to the event.  Additionally,
23 co-conspirators are often unaware of the subject's arrest and will continue to attempt to
24 communicate with the subject after the arrest to determine their whereabouts.  Given this,
25 I respectfully request permission to search the Target Devices for data beginning on
26 December 4, 2024, up to and including January 4, 2025, the day after the arrest of
27 MIQUEAL, SMITH, WRIGHT and the Material Witnesses.
28

## METHODOLOGY

18. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

21.     Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that MIQUEAL, SMITH, WRIGHT and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by MIQUEAL, SMITH, WRIGHT, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 27th day of January, 2025.

_____  03:12  p.m._____
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**      Blue NORD Cellphone
Model: One Plus Nord N30
Seized as FP& F: 2025255200004701 Item: 0002
Seized from Deanna SMITH
**(Target Device #1)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**	Grey iPhone Cellphone
Model: 16 Plus
Seized as FP& F: 2025255200004701 Item: 0003
Seized from Laura WRIGHT
**(Target Device #2)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**  Green iPhone Cellphone
Model: 13
Seized as FP& F: 2025255200004701 Item: 0004
Seized from Ashley MIQUEAL
**(Target Device #3)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**   White iPhone Cellphone
Model: Unknown
Seized as FP& F: 2025255200004701 Item: 0005
Seized from Jorge Eduardo GUERRERO-Sandate
**(Target Device #4)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**    Red iPhone Cellphone
Model: Unknown
Seized as FP& F: 2025255200004701 Item: 0006
Seized from Juan Carlos MARMOLEJO-Flores
**(Target Device #5)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of December 4, 2024, up to and including January 4, 2025, and is limited to the following:

   a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

   e. tending to identify the user of, or persons with control over or access to, the Target Device;

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.